IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Central States, Southeast and Southwest Areas Pension Fund; and Arthur H. Bunte, Jr., as Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | No: 16 C 4346 |
| v. | ) ) ) | Judge Ronald A. Guzmán |
| Frate Service, Inc., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court grants Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte's (collectively, the "Fund") motion for summary judgment [32] and denies Frate Service, Inc.'s ("Frate") motion for summary judgment [27]. The Fund is directed to file a proposed draft judgment order within 7 days of the date of entry of this order. Frate may file any objections to the draft order within 7 days thereafter; however, the parties are strongly encouraged to resolve any disputes between themselves without further Court involvement.

## STATEMENT

**Facts**

This is an action for collection of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan. (Def.'s Resp. Pls.' Stmt. Facts, Dkt. # 38, ¶ 1.) The Fund determined that on or about March 9, 2014, Frate permanently ceased to have an obligation to contribute to the Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal," as defined in 29 U.S.C. § 1383. (*Id*. ¶ 7.) As a result of the complete withdrawal, the Fund determined that Frate incurred withdrawal liability to the Fund in the principal amount of $571,732.39, as determined under 29 U.S.C. § 1381(b) ("Withdrawal Liability"). (*Id*. ¶ 8.) By November 2014, Frate was unable to pay its debts as they became due, had ceased substantially all of its operations and had liquidated substantially all of its assets. (*Id*. ¶¶ 10-12.) On or about November 18, 2014, Frate received a notice and demand for payment of the Withdrawal Liability (the "Notice and Demand") from the Fund. (*Id*. ¶ 13.) In the Notice and Demand, the Fund notified Frate that the balance owed at that time on the Withdrawal Liability was $571,732.39, and demanded full payment of the entire amount of the Withdrawal Liability by December 1, 2014, pursuant to 29 U.S.C. § 1399(c)(5)(B) and Appendix E, § 5(e)(2) of the Fund's Pension Plan. (*Id*. ¶ 14.) At the time the Notice and Demand was issued to Frate, the Fund had determined that there was a substantial likelihood that Frate would be unable to pay its Withdrawal Liability because: (1) Frate had failed to remit approximately $11,000 in contributions to the Fund; and (2) Frate admitted that it had

completely shut down and ceased operations. (*Id*. ¶ 16.)

By letter dated February 12, 2015, Frate requested a review of the Fund's withdrawal liability assessment "pursuant to ERISA § 4219 (29 U.S.C. § 1399)." (*Id*. ¶ 17.) Frate initiated an arbitration before the American Arbitration Association ("AAA"), intending to challenge the Fund's Withdrawal Liability Notice and Demand in accordance with the mandatory arbitration provision set forth in 29 U.S.C. § 1401. (*Id*. ¶ 18.) Along with its notice of arbitration, Frate submitted $650.00 to the AAA as a filing fee, but was subsequently notified by the AAA in July 2015 that the initial administrative arbitration fee was $6,200.00. (*Id*. ¶ 19.) The July AAA Letter advised Frate that no answering statement or counterclaim was due at that time "because the filing requirements [had] not been met," and that if the filing fee balance of $5,550.00 was not received by August 5, 2015, the arbitration could be administratively closed. (*Id*. ¶ 20.) Frate was again notified by the AAA via email dated February 16, 2016 that the arbitration was unable to be processed until the filing fee was paid in full, and again requested that Frate remit the filing fee balance of $5,550.00. (*Id*. ¶ 21.) The February email stated that the arbitration would be administratively closed for failure to cure a filing deficiency if the filing fee balance of $5,550.00 was not received by March 1, 2016. (*Id*. ¶ 22.)

Frate did not pay the balance of the filing fee, and the AAA administratively closed the matter on March 1, 2016. (*Id*. ¶ 23.) Frate currently has no assets and has not made any Withdrawal Liability payments to the Fund. (*Id*. ¶ 25.) The Fund filed a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Mulitemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq*., to collect Frate's withdrawal liability.

**Analysis**

The Fund moves for summary judgment on its claim to collect the Withdrawal Liability while Frate also moves for judgment in its favor, asserting that the Notice and Demand it received from the Fund was defective, and Frate is therefore not responsible for paying its withdrawal liability.

In 1974, Congress enacted ERISA, 29 U.S.C. § 1001 *et seq*., to regulate private pension and health plans. Multiemployer plans are pensions "to which more than one employer is required to contribute" and that "[are] maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer." 29 U.S.C. § 1002(37)(A). "These plans allow workers to change jobs while retaining their pension benefits, which are not tied to one particular employer." *Laborers' Pension Fund v. W.R. Weis Co. Inc*., 180 F. Supp. 3d 540, 548 (N.D. Ill. 2016). The MPPAA provides that an employer executes a complete withdrawal from a plan when it "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(b)(1). When an employer experiences a complete withdrawal from the Fund, withdrawal liability may be assessed against the employer based on unfunded vested benefits. 29 U.S.C. § 1381; *see Trustees of the Michiana Area Elec. Workers Pension Fund v. La*

*Place's Elec. Co.,* No. 14 C 244, 2017 WL 633847, at *3 (N.D. Ind. Feb. 15, 2017) ("Without withdrawal liability, Congress believed that the 'added burdens upon employers who remained as participants in plans might induce more of them to remove themselves from multiemployer plans. This process could discourage the entry of new participants and precipitate the financial failure of less stable plans.'") (citation omitted).

ERISA allows an employer to request a review of any assessment of withdrawal liability, see 29 U.S.C. § 1399(b)(2), but requires parties to resolve their withdrawal liability disputes through arbitration. *See* 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."). "If arbitration [is] not sought within the time period required by 29 U.S.C. § 1401(a)(1), the amount demanded by the pension plan sponsor is due and owing." *Trs. of Chi. Truck Drivers Pension Fund v. Cent. Transp., Inc.*, 888 F.2d 1161-64 (7th Cir. 1989). Because it is undisputed that Frate did not pay the full AAA filing fee and thus failed to complete the arbitration process, the Withdrawal Liability is due and owing.

Frate contends, however, that its duty to arbitrate was never triggered because it did not receive a proper notice and demand for its withdrawal liability from the Fund. Specifically, Frate asserts that ERISA requires that the notice include a schedule of payments, and because the Fund's Notice and Demand did not contain a schedule of installment payments, it had no duty to initiate arbitration. However, if Frate "took issue with the adequacy of the notice it received it was required to demand arbitration." *Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 225 (S.D.N.Y. 2009). Moreover, Frate concedes that the Fund was entitled to accelerate the full amount of the withdrawal liability, and that it received the Fund's Notice and Demand for Payment of Withdrawal Liability, which stated that the "total amount of [Frate's] withdrawal liability is $571,732.39" and "demand[ed] immediate payment of the entire amount due by December 1, 2014." The notice therefore provides all that is required. *See Cent. States, Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, No. 07 C 5220, 2009 WL 1470011, at *2 (N.D. Ill. May 27, 2009) ("[N]othing requires a 'schedule' to consist of multiple payments, a single payment is possible in several instances, and a single payment is consistent with the provisions of 29 U.S.C. § 1399."), *aff'd*, 620 F.3d 766 (7th Cir. 2010).

Finally, the Court notes that upon receipt of the notice, Frate sent a letter to the Fund dated February 12, 2015 and captioned "Request for Review," which stated that "pursuant to . . . § 1399, Frate requests that the Fund review its withdrawal liability determination." (Dkt. # 34-1.) Frate also submitted a notice of arbitration to the AAA with what it believed to be the proper filing fee. Given these actions, Frate's contention that notice was deficient is not well taken. In any event, as the Seventh Circuit has stated, "actual notice trumps any deficiencies in it as a statutory notice," and thus "[a]nyone who suspects that he might be . . . subjected to withdrawal liability would be well advised to commence arbitration, so that if a court holds that he is . . . subject to such liability he won't have waived the issues that are reserved for arbitration." *Chi. Truck Drivers v. El Paso Co.*, 525 F.3d 591, 600-01 (7th Cir. 2008) (internal quotation marks and citation omitted). Frate abandoned the arbitration process at its own peril.

Nor is Frate's argument that the amount demanded exceeds the 20-year cap described in § 1399(c)(1)(B) availing given that Frate failed to pay the full AAA filing fee and complete the arbitration process, thus waiving this argument. *Trustees of Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Cent. Transp., Inc.*, 935 F.2d 114, 118 (7th Cir. 1991) ("Whether the Fund has computed the withdrawal liability correctly is [a] question for the arbitrator.").

**Conclusion**

For these reasons, the Court grants the Fund's motion for summary judgment and denies Frate's motion for summary judgment. The Fund is directed to file a proposed draft judgment order within 7 days of the date of entry of this order. Frate may file any objections to the draft order within 7 days thereafter; however, the parties are strongly encouraged to resolve any disputes between themselves without further Court involvement.

**Date**: November 14, 2017

_____
**Ronald A. Guzmán**
**United States District Judge**